SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.
8000 Sagemore Drive, Suite 8303
Marlton, NJ 08053
(856) 751-8383
ROBERT N. BRAKER, ESQUIRE
ATTORNEY FOR PLAINTIFFS

| | |
|---|---|
| GRANT CALDIS, Individually, and INGRID TIERENS,<br>Parents and Natural Guardians of ISABEL CALDIS, a minor, and in her own right<br>126 Dudley Street<br>Apartment 301<br>Jersey City, NJ 07302<br>        Plaintiffs<br><br>        v.<br><br>STARBUCKS COFFEE COMPANY<br>2401 Utah Avenue South<br>Seattle, WA 98134<br><br>    And<br><br>STARBUCKS CORPORATION<br>2401 Utah Avenue South<br>Seattle, WA 98134<br><br>    And<br><br>STARBUCKS COFFEE COMPANY<br>1700 W. Nursery Road<br>Linthicum Heights, MD 21090<br><br>    And<br><br>JOHN DOE (1-10)<br><br>    And<br><br>JOHN DOE (11-20)<br><br>    And<br><br>JOHN DOE (21-30)<br>        Defendants | SUPERIOR COURT OF NEW JERSEY<br>ESSEX COUNTY<br>LAW DIVISION<br><br>DOCKET NO.<br><br>CIVIL ACTION<br><br><br>JURY TRIAL DEMANDED<br><br><br>COMPLAINT |

## COMPLAINT – CIVIL ACTION

Plaintiffs, Grant Caldis, Individually, and Ingrid Tierens, Parents and Natural Guardians for Isabel Caldis, a minor, and in her own right, claim of Defendants, Starbucks Coffee Company; Starbucks Corporation and Starbucks Coffee Company, jointly and severally, and each of them, sums of monetary damages, upon causes of action whereof the following are true statements:

1. Plaintiffs, Grant Caldis, Individually, and Ingrid Tierens, Parents and Natural Guardians for Isabel Caldis, a minor, are adult individuals residing at 126 Dudley Street, Apartment 301, Jersey City, NJ 07302.

2. Plaintiff, Isabel Caldis, is a minor individual (DOB 5/23/2008) residing at 126 Dudley Street, Apartment 301, Jersey City, NJ 07302.

3. Defendant, Starbucks Coffee Company, is a corporation or other business entity organized and existing under the laws of the State of Washington, which at all times mentioned herein, performed regular, systematic, and continuous business in Essex County, New Jersey, with its principal place of business located at 2401 Utah Avenue South, Seattle, WA 98134.

4. Defendant, Starbucks Corporation, is a corporation or other business entity organized and existing under the laws of the State of Washington, which at all times mentioned herein, performed regular, systematic, and continuous business in Essex County, New Jersey, with its principal place of business located at 2401 Utah Avenue South, Seattle, WA 98134.

5. Defendant, Starbucks Coffee Company, is a corporation or other business entity organized and existing under the laws of the State of Maryland, which at all times mentioned herein, performed regular, systematic, and continuous business in Essex County, New Jersey, with its principal place of business located at 1700 W. Nursery Road, Linthicum Heights, MD 21090.

6. Defendant, John Doe (1-10), is the entity responsible for owning, maintaining, managing, possessing, controlling, cleaning and/or overseeing the property known as Starbucks Coffee located at 1700 W. Nursery Road, Linthicum Heights, MD 21090. Defendant, John Doe (1-10) is a fictitious name and such use of a fictitious name is permitted under New Jersey Rule of Civil Procedure 4:26-4, allowing the use of a fictitious name due to plaintiff's inability to ascertain the party's identity despite diligent effort, so as to preserve a cause of action against said party within the applicable statute of limitations.

7. Defendant, John Doe (11-20), is the entity responsible for assembling, repairing and/or distributing the tables and/or any and all components of said tables at the property known as Starbucks Coffee located at 1700 W. Nursery Road, Linthicum Heights, MD 21090, including the subject table at the center of these causes of action. Defendant, John Doe (11-20) is a fictitious name and such use of a fictitious name is permitted under New Jersey Rule of Civil Procedure 4:26-4, allowing the use of a fictitious name due to plaintiff's inability to ascertain the party's identity despite diligent effort, so as to preserve a cause of action against said party within the applicable statute of limitations.

8. Defendant, John Doe (21-30), is the entity responsible for cleaning, inspecting, maintaining, repositioning, stacking, assembling, disassembling and/or repairing the tables at the Starbucks Coffee located at 1700 W. Nursery Road, Linthicum Heights, MD 21090. Defendant, John Doe (21-30) is a fictitious name and such use of a fictitious name is permitted under New Jersey Rule of Civil Procedure 4:26-4, allowing the use of a fictitious name due to plaintiff's inability to ascertain the party's identity despite diligent effort, so as to preserve a cause of action against said party within the applicable statute of limitations.

9. At all times mentioned herein and material hereto, Defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20)

and John Doe (21-30), owned, managed, maintained, possessed, operated and/or controlled the premises known as Starbucks Coffee, located at 1700 W. Nursery Road, Linthicum Heights, MD 21090 (hereinafter "the property").

10. At all times mentioned herein and material hereto, defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), by and through their separate and respective employees, servants and agents, maintained certain responsibilities and obligations for the aforesaid premises, including responsibilities for the assembly, maintenance, inspection, repair and upkeep of the tables on the property, which tables were intended for use by patrons of the aforesaid Starbucks Coffee.

11. Prior to November 13, 2011, Defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), knew or should have known that there existed a dangerous and defective condition at the aforesaid property, namely, an exceedingly dangerous, broken and malfunctioning table, which table was unfit and unsafe for its intended use because said table was dangerously assembled, repaired, maintained and inspected in that the screws that were intended to hold the tabletop to the base of the table were too small and insufficiently attached to secure the table top into the base of the table, and which table Defendants allowed to exist and remain for customers to use and failed to maintain and/or remedy for a significant period of time prior to Plaintiff's accident.

12. On November 13, 2011, Plaintiffs, Grant Caldis and Minor Plaintiff, Isabel Caldis, were business invitees at the aforesaid property.

13. At the aforesaid time and place, Plaintiff, Grant Caldis purchased hot cups of coffee and tea from Defendants and properly placed said cups of hot coffee and tea with lids on the aforesaid table.

14. Shortly thereafter, the three (3) year old minor Plaintiff, Isabel Caldis, rested her hands on the aforesaid dangerous and malfunctioning table, at which time the aforesaid tabletop separated from the table base and flew up in the air causing 40 ounces of scalding liquids to horrifically spill all over Minor Plaintiff, Isabel Caldis' back and legs, causing Isabel to sustain those serious, catastrophic and permanent injuries more specifically set forth hereinafter due to the shocking, willful and wanton carelessness and negligence of Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), by and through their separate and respective employees, servants and agents.

## COUNT I
## PLAINTIFFS v. ALL DEFENDANTS
## NEGLIGENCE

15. Plaintiff incorporates by reference paragraphs 1 through 13 above as though fully set forth hereinafter at length.

16. Defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), jointly and severally, by and through their separate and respective agents, servants, workmen and/or employees, were careless and negligent in:

   a. Allowing the table at issue to be assembled and/or repaired, installed and maintained on the property in such a careless and negligent manner as to create the exceedingly dangerous, broken and malfunctioning condition of the table;

   b. Allowing the tabletop to separate from the table base and catastrophically flip over due to said table being improperly assembled, repaired and/or maintained;

   c. Failing to properly and adequately assemble and/or repair the table so that the tabletop would not separate from the table base and catastrophically flip over;

   d. Attempting to connect the tabletop to the table base by using inappropriate screws that were ill-suited to that task and ill-suited to the conditions of the tabletop and table base;

e. Failing to properly and securely screw the tabletop to the table base;

f. Failing to have policies and/or procedures in place, or failing to dutifully monitor and enforce the faithful implementation of any policies and/or procedures, for insuring that screws used to attach tabletops to table bases were proper, appropriate and suited to the task;

g. Failing to have policies and/or procedures in place, or failing to dutifully monitor and enforce the faithful implementation of any policies and/or procedures, for insuring that tabletops are properly and securely attached to table bases before allowing customers to access and use tables, including tables at the aforesaid property;

h. Failing to properly inspect and/or clean, or failing to dutifully monitor and enforce the proper inspection and/or cleaning of, tables at the aforesaid property in order to identify tabletops that were not properly and securely attached to their table bases, and to identify tables that suffered from other defects, before allowing customers to access and use the tables at the aforesaid property;

i. Failing to adequately train, or failing to dutifully monitor and enforce the adequate training of, Defendants' employees to accurately observe, inspect and assess the condition of tables in order to insure that tabletops were properly secured to table bases, and that tables did not suffer from other defects, before allowing customers to access and use the tables;

j. Failing to adequately impress upon Defendant's employees the paramount need to maintain a safe customer environment and to aggressively monitor customer safety at the aforesaid property;

k. Failing to adequately train, or failing to dutifully monitor and enforce the adequate training of, Defendants' employees to proactively identify hazards to customers and remove hazards from customer dining areas, particularly from the dining area of the aforesaid property;

l. Failing to notice, or noticing and willfully ignoring, that the tabletop was loose and/or not properly attached to the table base;

m. Failing to identify, or identifying and willfully ignoring, the dangerous hazard that a loose and/or improperly connected tabletop and table base posed to customers in a setting designed to welcome customers and facilitate their consumption of scalding hot beverages;

n. Failing to remove and/or cordon off the exceedingly dangerous and defective table from the dining area;

o. Allowing Plaintiffs to access and use the aforesaid dangerous table whose tabletop catastrophically separated from its table base and flipped over upon being touched by minor Plaintiff, a diminutive, 30-pound 3-year old child;

p. Failing to have policies and/or procedures in place, or failing to dutifully monitor and enforce the faithful implementation of any policies and/or procedures, for removing dangerous and/or defective tables from the aforesaid property;

q. Failing to have policies and/or procedures in place, or failing to dutifully monitor and enforce the faithful implementation of any policies and/or procedures, for insuring that employees identify, report and remove any dangerous and defective tables identified in the process of cleaning, moving and/or inspecting tables;

r. Failing to warn Plaintiffs and other customers that the tabletop was not properly secured to the table base;

s. Allowing an exceedingly dangerous, broken and malfunctioning table to exist and remain available for customers to use at the aforesaid property prior to the occurrence of the accident, over which time Defendants learned of or should have learned of the table's existence and condition and should have removed or remedied the dangerous condition;

t. Knowing of and/or ignoring the existence of the exceedingly dangerous, broken and malfunctioning table and failing to remove or remedy the dangerous condition;

u. Failing to learn of the exceedingly dangerous, broken and malfunctioning table despite the table being located on the aforesaid property under the full and constant control of the Defendants prior to the Plaintiff's accident, and failing to remove or remedy the dangerous condition;

v. Failing to review, assess, document and confirm that the table was properly assembled and/or repaired before allowing customers to access and use the table;

w. Failing to heed warnings from customers and other 3rd parties, prior to the Plaintiff's accident, as to the table's exceedingly dangerous, broken and

malfunctioning condition, and failing to act to remove or remedy the dangerous condition;

x. Failing to adopt, enact or employ proper and adequate safety procedures, measures and plans, or failing to dutifully monitor and enforce the faithful implementation of any such procedures, measures and plans, to maintain the safe condition of said table, to readily identify its defective condition, and to immediately remove the table from use upon its becoming a hazard to customers;

y. Failing to have available and/or to supply a first-aid kit in order to administer first aid to burn victims, like Plaintiff, who suffer burns inflicted upon them by Defendants and Defendants' products at the aforesaid property;

z. Failing to temporarily suspend the sale of Defendants' products at the aforesaid property, after the occurrence of Plaintiff's accident, in order to prevent additional customers from arriving at the aforesaid property and interfering with the rendering of aid to Plaintiff by emergency responders;

aa. Violating and failing to comply with federal and state statutes, local ordinances and all other rules, enactments of regulations, applicable or in effect, be they administrative, industry-wide or otherwise, pertaining to the property and its fixtures and maintaining the safety and cleanliness thereof; and

bb. Other negligent acts which may be discovered through the course of discovery.

17. By reason of the shocking, willful and wanton carelessness and negligence of Defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), as aforesaid, Minor Plaintiff, Isabel Caldis was caused to sustain serious, disabling and permanent physical and psychological personal injuries:

a. Isabel sustained second degree burns over the entirety of her back (worse on the lower half);

b. Isabel was required to undergo conscious sedation and allow a burn unit surgeon to debride the blistering skin from her back to such depth at which surgeon reached live, viable tissue;

c. Isabel suffered severe emotional distress, fear, anxiety and mental anguish from the experience of remaining overnight in the hospital, and being

      subjected to the hospital's unfamiliar, uncomfortable and intimidating surroundings and environment;

d. Isabel suffered from agonizingly horrific and unimaginable pain throughout her body which was intensified by the debridement procedure and its removal of any remaining protective tissues from her back, which served to fully uncover and expose Isabel's raw, still live and highly sensitized nerve endings;

e. Isabel sustained severe mental anguish and fear, begging for help and pleading for her pain and treatments to stop;

f. Isabel has in the past been, and may continue in the future to be, required to submit to painful examinations, procedures and dressing changes;

g. Isabel has been subjected to a lengthy recovery process during which time her physical suffering evolved from the initial intense pain arising from her burns and initial treatments to a continuous, unrelenting and uncomfortable throbbing and itching associated with her body's healing process;

h. Isabel suffered through painful, time consuming and painstakingly careful dressing changes over 30+ consecutive days to maximize her body's healing process;

i. Isabel suffered through the removal of old dressings and the placement of new dressings, a process which involved being placed in a bath, having old dressings detached and peeled away from her raw wound (sometimes with adhered skin, and sometimes with pleas to stop the process), having the wound cleansed, treated and re-bandaged with new dressings, and having her trunk encased in a soft body cast to keep the dressing in place and to prevent Isabel from disturbing her raw wound;

j. Isabel suffered from a severe allergic reaction to the antibiotic initially prescribed to dress her wounds, including swelling, redness, welts and severe itching throughout her trunk, thighs and arms;

k. Isabel has suffered disfigurement on her back, and has suffered from a heightened sensitivity and persistent itch on her back that requires regular treatment to dissuade Isabel from continually scratching and opening wounds on her back;

l. Isabel has suffered from and continues to suffer from nightmares and bad memories of the accident;

m. Isabel experienced a personality change, developing pensiveness and fearfulness and temporarily losing her outgoing and cheerful personality, and

        continues to harbor fears of hot liquids and the paraphernalia that accompany them (e.g., mugs, cups, etc.);

n.    Isabel has sustained other physical and psychological injuries, the full extent of which have not yet been determined;

o.    Isabel has in the past and may in the future continue to endure pain, suffering and mental anguish;

p.    Isabel's underlying skin has been changed forever by her burn injuries, and she faces the potential long-term complication of an increased risk of developing skin cancer as a result of her burn injuries and the damage to her underlying tissue;

q.    Isabel has incurred and may in the future continue to incur significant medical bills relating to her burn injuries;

r.    Isabel has suffered and may in the future continue to suffer from severe embarrassment, humiliation and social stigma arising from her burn injuries; and

s.    Isabel has suffered and may in the future continue to suffer from a significant loss of life's pleasures by virtue of her burn injuries.

**WHEREFORE**, Plaintiffs, Grant Caldis and Ingrid Tierens, Parents and Natural Guardians for Isabel Caldis, claim of Defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), separate sums of monetary damages and brings this action to recover same.

### COUNT II
### PLAINTIFFS v. ALL DEFENDANTS
### PUNITIVE DAMAGES

18.    Plaintiffs incorporate by reference paragraphs 1 through 16 above as though fully set forth hereinafter at length.

19.    Defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), actions and inactions were

outrageous and performed willfully, wantonly and with complete disregard to Isabel Caldis' rights and safety, and with a reckless indifference to the rights of others.

20. Defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1–10), John Doe (11–20) and John Doe (21–30), jointly and severally, by and through their agents, servants, employees and workers, intentionally, outrageously and with reckless and wanton indifference and/or disregard for Plaintiff's rights, created, maintained, and failed to alleviate the hazardous conditions that threatened Plaintiff and other persons in Plaintiff's position by:

   a. Knowingly using inappropriate screws to attempt to connect the tabletop to the table base despite knowing that hot beverages were, and would be, frequently placed upon the tabletop and that the failure to properly and adequately secure the tabletop to the table base would likely cause scalding hot liquids to spill upon customers and cause said customers to suffer severe burns;

   b. Failing to remove the table from the dining area, and/or failing to adequately repair the table, which was defective and exceedingly dangerous despite being fully aware that the failure to remove and/or adequately repair said table would likely lead to scalding hot liquids being spilled upon customers and said customers suffering severe burns;

   c. Failing, at all levels of store and corporate management and oversight, to dutifully monitor and enforce the faithful implementation of a comprehensive safety program requiring that tables be regularly and thoroughly inspected, cleaned, assessed and documented for proper and secure construction, assembly and/or repair, despite the knowledge that the failure to enforce the faithful implementation of any such safety program would likely lead to scalding hot liquids being spilled upon customers and said customers suffering severe burns by virtue of dangerous and defective tables; and

   d. Willfully and wantonly neglecting the table, ignoring its condition, failing to inspect, clean, observe, assess, maintain and/or otherwise regard the table to confirm its structural safety and soundness despite knowing that hot beverages were, and would be, frequently placed upon the tabletop and that a willful failure to maintain and monitor said table and/or identify and remedy any defect or exceedingly dangerous condition in it would likely lead to scalding hot

liquids being spilled upon customers and said customers suffering severe burns.

21. Defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), actions and inactions, at a minimum, evidence reckless disregard of and indifference to the human rights and safety of their customers including minor Plaintiff, Isabel Caldis.

22. Defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), knew or should have known that their conduct and lack thereof as described above created a high degree of risk of physical harm to their customers including minor Plaintiff, Isabel Caldis.

23. Despite this knowledge, Defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), proceeded to act in reckless disregard of and indifference to the high risk of physical harm to their customers including minor Plaintiff, Isabel Caldis.

24. Defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), have intentionally acted in an unreasonable character, in disregard to the high risk known or should have been known to them, and so great as to make it highly probable that harm to their customers including minor Plaintiff, Isabel Caldis would follow.

25. As a direct and proximate result of Defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), aforesaid punitive conduct, Isabel Caldis suffered those serious personal injuries, set forth above, which are fully incorporated herein by reference.

WHEREFORE, Grant Caldis and Ingrid Tierens, Parents and Natural Guardians for Isabel Caldis, claim of Defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), separate sums of monetary punitive damages and brings this action to recover same.

## COUNT III
## GRANT CALDIS v. DEFENDANTS
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

26. Plaintiffs incorporate by reference paragraphs 1 through 24 above as though fully set forth hereinafter at length.

27. As a direct and proximate result of the outrageous, willful and wanton carelessness, negligence and other liability producing conduct of defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), as aforesaid, Plaintiff, Grant Caldis, witnessed first-hand, at close range, the horrific accident which caused his daughter, Isabel Caldis to suffer horrific second degree burns.

28. As a result of being placed in the zone of danger and contemporaneously witnessing his daughter being horrifically burned, Plaintiff, Grant Caldis, suffered and continues to suffer severe emotional distress, psychological pain, emotional scarring, fear, anxiety, mental anguish and other debilitating emotional, psychological and mental injuries, the full extent of which may not have yet been realized.

WHEREFORE, Grant Caldis, claim of Defendants, Starbucks Coffee Company, Starbucks Corporation, Starbucks Coffee Company, John Doe (1-10), John Doe (11-20) and John Doe (21-30), separate sums of monetary damages and brings this action to recover same.

                SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.
                8000 Sagemore Drive, Suite 8303
                Marlton, NJ 08053
                (856) 751-8383
                (856) 751-0868 (Fax)

By: _____
                Robert N. Braker, Esquire

## JURY DEMAND

A jury trial is hereby demanded.

SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.
8000 Sagemore Drive, Suite 8303
Marlton, NJ 08053
(856) 751-8383
(856) 751-0868 (Fax)

By: _____
Robert N. Braker, Esquire

Dated: 2/7/14

## DESIGNATION OF TRIAL COUNSEL

Pursuant to the provisions of Rule 4:25-4, the Court is advised that Robert N. Braker, Esquire, is hereby designated as trial counsel.

SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.
8000 Sagemore Drive, Suite 8303
Marlton, NJ 08053
(856) 751-8383
(856) 751-0868 (Fax)

By: _____
Robert N. Braker, Esquire

Dated: 2/4/14

## CERTIFICATION

I hereby certify that pursuant to Rule 4:5.-1, there are no other matters pending in connection with this controversy. I further certify that there is no arbitration proceeding pending or contemplated. Finally, I certify that there are no other parties, to the best of my knowledge, which should be joined.

                SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.
                8000 Sagemore Drive, Suite 8303
                Marlton, NJ 08053
                (856) 751-8383
                (856) 751-0868 (Fax)

By: _____
                Robert N. Braker, Esquire

Dated: 2/4/14

**Appendix XII-B1**



| CIVIL CASE INFORMATION STATEMENT (CIS) Use for initial Law Division Civil Part pleadings (not motions) under *Rule* 4:5-1 Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|
| | PAYMENT TYPE:  ☐ CK  ☐ CG  ☐ CA |
| | CHG/CK NO. |
| | AMOUNT: |
| | OVERPAYMENT: |
| | BATCH NUMBER: |

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Robert N. Braker, Esquire | (856) 751-8383 | Essex |
| **FIRM NAME** (if applicable) | | **DOCKET NUMBER** (when available) |
| Saltz, Mongeluzzi, Barrett & Bendesky, P.C. | | |
| **OFFICE ADDRESS** 8000 Sagemore Drive, Suite 8303 Marlton, NJ 08053 | | **DOCUMENT TYPE** Complaint |
| | | **JURY DEMAND**   ■ YES   ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Grant Caldis, Ingrid Tierens, p/n/g of Isabel Caldis, a minor and in her own right | Grant Caldis, et al. v. Starbucks |

| CASE TYPE NUMBER (See reverse side for listing) | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES   ■ NO |
|---|---|
| 605 | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| **RELATED CASES PENDING?**  ☐ YES   ■ No | IF YES, LIST DOCKET NUMBERS |
| **DO YOU ANTICIPATE ADDING ANY PARTIES** (arising out of same transaction or occurrence)?   ☐ YES   ■ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)   ☐ NONE   ■ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?   ☐ YES   ■ No | IF YES, IS THAT RELATIONSHIP: ☐ EMPLOYER/EMPLOYEE   ☐ FRIEND/NEIGHBOR   ☐ OTHER (explain) ☐ FAMILIAL   ☐ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☐ YES   ■ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION




| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?   ☐ YES   ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?   ☐ YES   ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:

**Side 2**



# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
- 151 NAME CHANGE
- 175 FORFEITURE
- 302 TENANCY
- 399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502 BOOK ACCOUNT (debt collection matters only)
- 505 OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506 PIP COVERAGE
- 510 UM or UIM CLAIM (coverage issues only)
- 511 ACTION ON NEGOTIABLE INSTRUMENT
- 512 LEMON LAW
- 801 SUMMARY ACTION
- 802 OPEN PUBLIC RECORDS ACT (summary action)
- 999 OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
- 305 CONSTRUCTION
- 509 EMPLOYMENT (other than CEPA or LAD)
- 599 CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605 PERSONAL INJURY
- 610 AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621 UM or UIM CLAIM (includes bodily injury)
- 699 TORT – OTHER

**Track III - 450 days' discovery**
- 005 CIVIL RIGHTS
- 301 CONDEMNATION
- 602 ASSAULT AND BATTERY
- 604 MEDICAL MALPRACTICE
- 606 PRODUCT LIABILITY
- 607 PROFESSIONAL MALPRACTICE
- 608 TOXIC TORT
- 609 DEFAMATION
- 616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617 INVERSE CONDEMNATION
- 618 LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
- 156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303 MT. LAUREL
- 508 COMPLEX COMMERCIAL
- 513 COMPLEX CONSTRUCTION
- 514 INSURANCE FRAUD
- 620 FALSE CLAIMS ACT
- 701 ACTIONS IN LIEU OF PREROGATIVE WRITS

**Centrally Managed Litigation (Track IV)**
- 285 STRYKER TRIDENT HIP IMPLANTS
- 288 PRUDENTIAL TORT LITIGATION
- 289 REGLAN
- 290 POMPTON LAKES ENVIRONMENTAL LITIGATION
- 291 PELVIC MESH/GYNECARE
- 292 PELVIC MESH/BARD
- 293 DEPUY ASR HIP IMPLANT LITIGATION
- 295 ALLODERM REGENERATIVE TISSUE MATRIX
- 623 PROPECIA

**Mass Tort (Track IV)**
- 266 HORMONE REPLACEMENT THERAPY (HRT)
- 271 ACCUTANE/ISOTRETINOIN
- 274 RISPERDAL/SEROQUEL/ZYPREXA
- 278 ZOMETA/AREDIA
- 279 GADOLINIUM
- 281 BRISTOL-MYERS SQUIBB ENVIRONMENTAL
- 282 FOSAMAX
- 284 NUVARING
- 286 LEVAQUIN
- 287 YAZ/YASMIN/OCELLA
- 601 ASBESTOS

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.

**Please check off each applicable category**   ☐ Putative Class Action    ☐ Title 59